## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADELBERT M. GIEL )<br><br>Plaintiff, )<br><br>v. )<br><br>DONALD C. WINTER,[1] )<br>Secretary of the Navy, )<br><br>Defendants. ) | Civ. No. 03-0104 (TFH) |

### MEMORANDUM OPINION

Pending before the Court are the Secretary of the Navy's ("Secretary") Motion to

Dismiss or for Summary Judgment and Adelbert M. Giel's ("Giel") Cross Motion for

Summary Judgment. For the reasons that follow, the Court will grant the Secretary's

summary judgment motion and deny Giel's cross motion.

### BACKGROUND

In 1975, the United States Navy commissioned Giel as an ensign in the Naval

Reserves. Compl. ¶ 2. Giel served as a reservist from 1975 to 1983. *Id.* During that time, he

ultimately reached the rank of Lieutenant Commander. *Id.* In 1984, Giel was recalled to full

time active duty and later reassigned to the Navy's Training and Administrative Reserve

---

[1] Plaintiff Adelbert Giel filed the complaint against then-Secretary of the Navy Gordon
England in his official capacity. Because England no longer serves in that capacity, his
successor, Donald Winter, is substituted as the named defendant. *See* Fed. R. Civ. P. 25(d)(1).

("TAR") program.[2]  Compl. ¶¶ 3, 7.  From fiscal year ("FY") 1991 through FY 1996, Giel

sought promotion to the rank of commander each year through promotion selection boards.

Compl. ¶¶ 14-16.  However, Giel was never selected for promotion.  *Id.*

On October 3, 1994, Giel sought relief from the Board for the Correction of Naval

Records ("BCNR").  Compl. ¶ 19.  He sought to void his 5 prior promotion non-selections

and to have a special selection board ("SSB") reconsider his promotion.  *Id.*  Giel asserted that

his assignment history made it difficult to compete with other officers and resulted in his

repeatedly being passed over for promotion.  Compl. ¶¶ 19, 20.

In 1995, the BCNR granted Giel relief by removing from his record the decisions not

to promote Giel for FYs 1991 through 1996, setting aside his mandatory retirement, and

placing him before the next commander promotion board.  AR 6; Compl. ¶ 20; Pl.'s App. Vol.

2 at 8.  After being passed over again in FYs 1997 and 1998, Giel was ultimately selected for

mandatory retirement under the Temporary Early Retirement Authority ("TERA") on May 1,

1998.  Compl. ¶ 24.

On November 1, 1998, Giel again sought relief from the BCNR, requesting that his

promotion non-selections in FYs 1997 and 1998 be set aside and the authorization of a SSB to

reconsider his promotion retroactive to FYs 1991 to 1995 or to allow him to provide a special

board with his fitness reports from an operational tour from 1993 to 1995.  Compl. ¶ 25.  The

BCNR denied Giel's requested relief on January 10, 2001.  AR 1-2.

Giel filed the present action on January 21, 2003, "seek[ing] judicial review of the

---

[2]  The TAR program involves officers who are not on the active-duty list. *See Dowds v. Bush*, 792 F. Supp. 1289, 1296 (D.D.C. 1992).  TAR officers are on the reserve active status list. Pl.'s Statement of Opposing Material facts ("Pl.'s SOMF") ¶ 2.2.

BCNR's decision limited to the denial of [his] request for a special selection board remedy to reconsider his promotion for [commander] retroactive to FY 1991-95." Compl. ¶ 30.  Giel requests the Court declare that the Secretary's denial of relief violated the Administrative Procedure Act ("APA"), arguing the denial was an arbitrary and capricious agency action. Giel asks that the Court remand this case to the Navy with instructions that it convene a SSB or provide some other board remedy to correct Giel's non-selection for commander and promotion history in FYs 1991 to 1998.  Compl. p. 11.

The Secretary moves for dismissal or, alternatively, for summary judgment, arguing (1) Giel's claims are time barred under the six-year limitations period provided in 28 U.S.C. § 2401(a), (2) the BCNR lacks authority to convene SSBs for reserve officers not on the active duty list for selection boards that occurred before October 1996, and, (3) overall, its denial of relief was not arbitrary or capricious and is supported by substantial record evidence.

Giel cross moves for summary judgment, arguing (1) the BCNR had equitable discretion to convene SSBs or grant other board remedies to act in lieu of SSBs for reserve officers not on the active duty list, and (2) the BCNR's denial of relief was arbitrary and capricious because it departed from its adjudicatory practice in similar case in which it granted a retroactive *de facto* SSB

## ANALYSIS

I.      **Judicial Review of a BCNR Decision**

This Court reviews the decisions of boards for correction of military records under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.  *Piersall v. Winter*, 435 F.3d 319, 323-24 (D.C. Cir. 2006) ("[T]he decisions of boards for correction of military records are

subject to review under the APA."). Thus, review of a board's final decision is limited to a determination of whether the decision is "arbitrary and capricious, contrary to law, or unsupported by substantial evidence." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997).

Generally, a court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Roberts v. Harvey*, 441 F. Supp. 2d 111, 118 (D.D.C. 2006) (quoting *MD Pharm. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C. Cir. 1998)). Nor will a court disturb a decision—even one of "less than ideal clarity"—"if the agency's path may be reasonably discerned." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986).

In reviewing military correction boards' decisions, particularly, because of the "high degree of deference [that] arises from the statutory language authorizing a Secretary of a military department—acting through civilian boards—to correct military records 'when the Secretary considers it necessary to correct an error or remove and injustice,'" *Roberts v. Harvey*, 441 F. Supp. 2d 111, 119 (D.D.C. 2006) (citing 10 U.S.C. § 1552(a)(1)), courts employ "an unusually deferential application of the 'arbitrary and capricious standard,'" *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (citations omitted). And a party seeking review is saddled with the burden of surmounting "the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully and in good faith." *Frizelle*, 111 F.3d at 177. *See also LeBoeuf,*

4

*Lamb, Greene & MacRae, L.L.P. v. Abraham*, 347 F.3d 315, 320 (D.C. Cir. 2003) (noting that, under APA review, an "agency is entitled to a presumption of regularity" (citation and internal citations omitted)).

## II.    Statute of Limitations

The Secretary argues this Court should dismiss Giel's complaint because the six-year statute of limitations bars Giel's APA claim. *Memorandum of Points and Authorities in Support of the Secretary's Motion to Dismiss or, in the Alternative, for Summary Judgment* ("Def.'s Mot.") 8 (citing 28 U.S.C. § 2401; *Impro Prds., Inc. v. Block*, 722 F.2d 845, 850 (D.C. Cir. 1983)).  According to the Secretary, Giel filed his complaint on January 21, 2003, and, therefore, any claims that accrued before January 21, 1997, are time barred.

Giel disagrees.  He argues his claims are not time barred because the BCNR reopened his case in 2001 and, alternatively, the limitations period was tolled during his active duty under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. app. § 501, et seq.  *See Plaintiffs Memorandum of Points and Authorities In Support of Cross-Motion for Summary Judgment, and In Opposition to Defendant's Motion to Dismiss* ("Pl.'s Mot.") 1-3.

Giel's latter argument is correct.  "[T]he period of a service member's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any necessary action or proceeding in court."  50 U.S.C. app. § 526(a).  Although, as the Secretary submits, Giel "does not site [sic] authority . . . that applies the SCRA to the statute of limitations under the APA," Def.'s Opp'n & Reply 2, § 526(a)'s "immediate predecessor and substantive equivalent—50 U.S.C. app. § 525—tolls any limitations period . .

. appearing in any law for the bringing of any action before any court, board or bureau."[3]

*Baker v. England*, 397 F. Supp. 2d 18, 24 (D.D.C. 2005) (citing *Detweiler v. Pena,* 38 F.3d

591, 593 (D.C. Cir.1994)) (internal quotation marks omitted; ellipsis in original).  Because the

Secretary points to no contrary authority and the plain language of § 526 contains no

exception to its application—i.e., "any period limited by law"—this Court finds that § 526(a)

tolls the six year limitation period of 28  U.S.C. § 2401.

Treating the complaint's factual allegations as true, as this Court must in reviewing the

Secretary's motion to dismiss, *see Sparrow*, 216 F.3d at 1113, Giel was an active member of

the United States Navy until 1998, Compl. ¶ 24.  Additionally, the Secretary admits Giel did

not cease serving until 1998.  Def.'s SOMF ¶ 6.  Under the SCRA, therefore, the six year

limitations period did not begin running until 1998.  Thus, Giel's complaint was timely filed

in 2003.  *See* 28  U.S.C. § 2401(a) ("[E]very civil action commenced against the United States

shall be barred unless the complaint is filed within six years after the right of action first

accrues."),

## III.   BCNR Decision

### A.     Special Selection Boards for FYs 1991 through 1996

The Secretary argues that the BCNR's refusal to grant Giel SSBs for FYs 1991-1996

was proper because, as a matter of law, the BCNR lacks authority to convene SSBs for

officers on the reserve active list for boards that originally convened prior to October 1, 1995.[4]

---

[3] In 2003, the SCRA amended the Soldiers and Sailors Civil Relief Act but left
substantially unchanged the relevant tolling provision of 50 U.S.C. app. § 525.

[4] In its January 10, 2001, decision, the BCNR noted that "under Secretary of the Navy
Instruction 1401.1B, special selection boards may be convened for boards convening on or after

*See* Def.'s Mot. at 9.   Because there is no dispute that the promotion boards for FYs 1991

through 1996 all convened before that date, the Secretary submits the BCNR committed no

error in denying Giel's request for SSBs.  *Id.*[5]

Prior to October 1, 1996, convening of SSBs for officers considered for promotion but

not selected was governed exclusively by 10 U.S.C. § 628(b)(1).  In pertinent part, § 628(b)(1)

provides:

> If the Secretary of the military department concerned determines, in the case of
> a person who was considered for selection for promotion by a promotion board
> but was not selected, that there was material unfairness with respect to that
> person, the Secretary may convene a special selection board under this
> subsection to determine whether that person (whether or not then on active
> duty) should be recommended for promotion.

By instruction, and pursuant to the discretion vested in him by Department of Defense

Directive 1320.11 (Nov. 9, 1981), the Secretary restricted use of SSBs under § 628 to officers

on the active-duty list.  SECNAVINST 1401.1, ¶ 2. (1982) ("A special selection board may be

convened when the Secretary of the Navy determines that an officer on the active-duty list was

not recommended for promotion by a regularly scheduled selection board . . . .").

The Secretary's authority to impose such a restriction is unquestioned.  In *Etheredge v.*

*United States*, 8 Cl. Ct. 736 (1985), the Court of Claims interpreted § 628 in the context of the

TAR program.  Rejecting a TAR officer's argument that he was entitled to a SSB, the court

---

1 October 1995" and "FY 91 throough [sic] 96 promotion boards all convened before that date."
A.R. at 2.

[5] While the Secretary frames his argument concerning the BCNR's authority to convene
SSBs under a Rule 12(b) motion to dismiss, the Court finds that it should properly be considered
as a motion for summary judgment. *See Flynn v. Tiede-Zoeller*, 412 F. Supp. 2d 46, 50 (D.D.C.
2006) (stating that "[t]he decision to convert a motion to dismiss into a motion for summary
judgment . . . is committed to the sound discretion of the trial court" (citation omitted)).

found that "the Secretary of the Navy has determined that a special selection board may be

convened under 10 U.S.C. § 628(b)(1) only with respect to officers on the active-duty list."

*Id.* at 741 (citing SECNAVINST 1401.1 (1982)).  In finding no error in the decision not to

utilize a SSB, the court held that § 628(b)(1) "accorded the Secretary discretion to restrict the

use of special selection boards, and it is for the Secretary, not this court, to define his

prerogatives."  *Id.*  Similarly, in discussing SECNAVINST 1401.1 (1982) and the

discretionary language of § 628(b)(1), Judge Flannery of this court noted that, "if the Secretary

[of the Navy] chooses to restrict the use of special selection boards to active-duty officers, he

may do so."  *Dowds v. Bush*, 792 F. Supp. 1289, 1297 (D.D.C. 1992).  Thus, Judge Flannery

concluded, "The Secretary acted within his statutory discretion in promulgating a regulation

which restricted the availability of special selection boards to active-duty officers."  *Id.*

In 1994, Congress passed the Reserve Officer Personnel Management Act

("ROPMA"), 10 U.S.C. § 14502 (effective October 1, 1996), which provides statutory

authority for the convening of SSBs for reserve officers such as Giel.  In pertinent part,

§14502 provides:

> In the case of an officer or former officer who was eligible for promotion and
> was considered for selection for promotion from in or above the promotion
> zone under this chapter by a selection board but was not selected, the Secretary
> of the military department concerned may, under regulations prescribed by the
> Secretary of Defense, convene a special selection board under this subsection
> to determine whether the officer or former officer should be recommended for
> promotion . . . .

10 U.S.C.A. § 14502(b)(1).  Department of Defense Directive 1320.11 (May 6, 1996)

implemented ROPMA and, as with § 628, vested discretion with the Secretary to limit the

convening of SSBs for officers considered but not selected by promotion boards.  Pursuant to

8

his "discretion to restrict the use of special selection boards," *Etheredge*, 8 Cl. Ct. at 741, the

Secretary issued the following instruction:

> Special promotion selection boards . . . for officers on the reserve active status
> lists [are authorized] only in cases where the promotion selection board in
> question is convened on or after 1 October 1995.

SECNAVINST 1401.1B, ¶ 3a (1997).

As the Secretary correctly argues, then, because each of the promotion selection boards

for which Giel seeks a SSB—i.e., FYs 1991 to 1996, Compl. ¶ 30—convened prior to October

1, 1995, the BCNR was not authorized to grant Giel his requested relief.  SECNAVINST

1401.1B, ¶ 3a (1997).  As Judge Flannery found, "if the Secretary chooses to restrict the use

of special selection boards," such as the restriction pertinent here to promotion selection

boards that convened after October 1, 1995, "he may do so."  *See Dowds*, 792 F. Supp. at

1297.

Seemingly accepting the Secretary's authority to restrict the use of SSBs and the actual

restriction placed on their use by the Secretary's 1997 instruction, *see* Pl.'s Mot. 7 ("Giel's

claim is not a demand for an SSB under § 14502 . . . ."), Giel claims the BCNR had pre-

ROPMA authority under its "equitable mandate" to convene SSBs for officers not on the

active duty list, Pl.'s Mot. 3.  As authority for the BCNR to convene such SSBs, Giel points to

what he terms the "exception" contained in SECNAVINST 1401.1, ¶ 13c (1982), which, in

relevant part provides that the BCNR "may, in appropriate cases, recommend to the Secretary

of the Navy that an individual's case be referred to a special selection board."  As stated

above, however, by its terms SECNAVINST 1401.1 (1982) only "appli[ed] to officers of the

Navy and Marine Corps on the active-duty lists," SECNAVINST 1401.1, ¶ 2 (1982).  And, as

Giel concedes, because he was a TAR officer, he was not, for purposes of the instruction, considered on the active duty list. Compl. ¶ 5. Thus, SECNAVINST 1401.1, ¶ 13c (1982) is inapplicable to Giel.[6]

As further support for his argument, Giel points to a 1993 BCNR case involving Rita Szymanski as exemplifying the "BCNR's unfettered mandate to create exceptional remedies to fit unique injustices" and, thus, its authority to grant him a SSB for selection boards that convened before October 1, 1995. Pl.'s Mot. 4. In that matter, Szymanski was passed over twice by TAR lieutenant commander selection boards in FYs 1992 and 1993, after which she was involuntarily released from active duty as a TAR intelligence officer and ordered to active duty for training as a non-TAR reserve intelligence officer. Pl.'s App. Vol. 2 at 8. She petitioned the BCNR for relief, requesting removal of her passovers from her record, SSBs to reconsider her promotions for FYs 1992 and 1993, adjustment of her date of rank, award of back pay, and, impliedly, removal from her record of any material indicating that she was ordered to active duty for training as a non-TAR reservist. *Id.* Finding that action was required due to factors similar to Giel's—i.e., for her first assignment and on advice of her seniors, Szymanski filled a non-operational billet—the BCNR recommended removal of Szymanski's passovers and correction of her record to show she continuously served on active duty as a TAR officer. *Id.* at 10. The BCNR did not recommend or even consider her request for a SSB because the FY 1994 naval reserve line lieutenant commander selection board

---

[6] Interestingly, in his statement in support of his application for correction, Giel contended that, in granting relief on his 1995 application, "the BCNR lacked authority at that time to grant applicant a special selection board." AR 6. Thus, Giel obviously understood the BCNR did not have pre-ROPMA authority, equitable or otherwise, to grant TAR officers such as himself a SSB.

10

selected her for promotion to the rank of lieutenant commander. *Id*. at 8. Thus, the BCNR essentially accepted the non-TAR selection board's promotion selection as that of a TAR selection board. Giel argues that such treatment effected the granting of a *de facto* SSB and supports his argument that the BCNR possessed the equitable authority to grant him SSBs for FYs 1991 through 1996.

Although the BCNR arguably granted Szymanski a type of "equitable" relief, as recognition of a non-TAR selection board's decision as that of a TAR selection board is not specifically provided for by statute or regulation, Giel's argument that the BCNR had authority to grant him SSBs is unpersuasive. As stated, the Secretary's authority over convening SSBs within the contours of Department of Defense regulations is unquestioned. *See Etheredge*, 8 Cl. Ct. at 741; *Dowds*, 792 F. Supp. at 1297. Regarding special selection boards for officers considered but not selected for promotion, Department of Defense directives vested the Secretary with discretion to restrict their use. *See* DoD Directive 1320.11, ¶ 4.2 (May 6, 1996). SECNAVINST 1401.1B ¶ 3a (1997), cited above, prohibits SSBs for promotion boards convening before October 1, 1995, a date before which all of the boards for which Giel requests SSBs convened. Likewise, SECNAVINST 1401.1 (1982), by its terms, applied only to officers on the active duty list, which Giel was not.

In view of the foregoing, the Court cannot conclude that the Secretary's decision not to grant Giel's request for the convening of SSBs for FYs 1991 through 1996 was arbitrary and capricious. Therefore, the Court will defer to the Secretary's decision. *See Frizelle*, 111 F.3d at 176 (holding that a court shall "defer to the Board's decision unless it is arbitrary and capricious, contrary to law, or unsupported by substantial evidence").

11

### B.    The BCNR's Alleged Departure from Prior Practice

Giel does not claim the BCNR's January 10, 2001, decision was arbitrary and capricious because his regular promotion boards acted contrary to the law, their actions involved material errors of fact or administrative error, or they did not consider relevant evidence. Rather, Giel contends the BCNR erred in "ignoring its prior adjudicatory practice in an identical case of injustice." Pl.'s Mot. 7. Because the Court finds no error in the BCNR's decision, it will grant the Secretary's summary judgment motion.

As support for his claim that the BCNR ignored its prior practice, Giel points only to the 1993 Szymanski decision, in which, he argues, the BCNR granted Szymanski a *de facto* SSB as a form of retroactive relief to "replicate closely as possible the original selection board in FY 93 with parallel criteria, personnel policies, and with her contemporary year group." Pl.'s Mot. 9-12. Arguing that Szymanski's case involved an "identical case of injustice" with "substantially the same" facts, Pl.'s Mot. 8, Giel cites a litany of cases that stand for the proposition that judicial deference is inappropriate for *ad hoc* or inconsistent judgments. Pl.'s Mot. 7-8 (citing *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 539 (D.C. Cir. 1988); *NRDC v. SEC*, 606 F.2d 1031, 1049 n.23 (D.C. Cir. 1979); *Local 777, AFL-CIO v. NLRB*, 603 F.2d 862, 869, 870-72 (D.C. Cir. 1978); *Lucas v. Hodges*, 730 F.2d 1493, 1502-04 (D.C. Cir. 1984); *Service v. Dulles*, 354 U.S. 363, 386 (1957)).

Although Giel is correct that the cases he cites generally support his position that an agency cannot, without explanation, depart from established policies or practices, as Giel concedes, the BCNR is "not bound by previous decisions in other cases," Pl.'s SOMF ¶ 4.5. And a single, non-binding case—that of Rita Szymanski—hardly amounts to an established

12

policy, pattern or norm described in the cited cases.

Moreover, Szymanski's case is not, as Giel argues, identical to his own. As described above, while Szymanski faced similar factors warranting relief, the BCNR did not grant Szymanski a SSB in her 1993 case. Rather, accepting that, through no fault of her own, Szymanski was twice non-selected for promotion and involuntarily removed from active duty as a TAR officer, the BCNR recommended Szymanski be returned to active duty as a TAR officer and her record be altered to show continuous active duty service as a TAR officer. Pl.'s App. Vol. 2 at 10. The BCNR did not consider Szymanski's request for SSBs because, during the period of her release from active duty as a TAR officer, a non-TAR promotion board selected Szymanski for promotion to the rank of lieutenant commander. *Id.* at 8.[7] In stark contrast to the facts of Giel's case, then, Szymanski was actually selected by a promotion board.

Giel also attempts to fault the BCNR for inadequately addressing his reference to Szymanski in his application for correction. He contends the BCNR neither addressed nor distinguished "its prior related adjudication under Syzmanski [sic] 1993." Pl.'s Mot. 13. Seemingly recognizing that the BCNR did discuss Szymanski's later case in which the BCNR granted her a SSB, Giel argues the BCNR "fundamentally confuse[d] [his] reference to Syzmanski's [sic] later case in 1998 that granted her a SSB for a missed board, with [his] claim of discriminatory treatment stemming from her 1993 remedy." *Id.* Giel claims that he

---

[7] The remedy afforded Szymanski effectively substituted her non-TAR promotion selection for a TAR promotion selection. This was the same treatment afforded Giel in 1984 when his temporary recall to active duty as a TAR officer was made permanent after a non-TAR reserve selection board recommended him for promotion to the rank of lieutenant commander. *See* Pl.'s Mot. 11; Pl.'s SOMF ¶¶ 2.4-2.6.

"did not rely on the BCNR's unrelated SSB for Syzmanski [sic] in 1998 when she missed a regular board in FY 99, but the Board's earlier remedy in 1993." *Id*. Fairly read, however, Giel's statement in support of his application for correction relies on Szymanski's 1998 case to support his request for "reconsideration for Commander by Special Selection Boards." AR 6. Indeed, after spending approximately six pages arguing why he was eligible for SSBs, Giel submitted that a "related, BCNR companion case is relevant, and corroborates the prejudice determination of CAPT Saia. In <u>LCDR Szymanski</u> BCNR Dkt. 1845-98 (15 July 1998), CAPT. S.P. Brooks, made a similar prejudice determination to support there, a Special Selection Board under ROPMA." AR 12. Nowhere in his application does Giel specifically reference Szymanski's 1993 case. Addressing Giel's citation to Szymanski's case, the BCNR correctly noted that SSB consideration was approved because Szymanski had missed a board for which her corrected date of rank would have made her eligible. AR 2. In light of Giel's use of Szymanski's case in his application and this Court's finding as to the lack of similarity between the two matters, this Court cannot find error in the BCNR's consideration of its prior decisions in Szymanski's cases.

Finally, Giel argues that, unlike in Szymanski's case, the BCNR granted him only partial relief by setting aside prior non-selections and allowing future considerations by regular promotion boards in FYs 1997 and 1998 under stricter substantive criteria, which created a "supercompetitive standard under 1991-1994 benchmarks." Pl.'s Mot. 11. Essentially Giel argues that the relief afforded him in 1995 put him before two TAR boards that operated under certain constraints "of a drastically changed post-Cold war environment after FY 1995 with significantly reduced manpower." *Id*. at 12. Giel asserts that this relief

did not "come remotely close to recreating the retroactive practice employed in the companion case" of Sysmanski. *Id.* at 11.  The BCNR addressed Giel's argument by noting that, "[e]ven if you are correct that promotion was more difficult in FY 97 and 98 than in FY 91-92, this would not establish that your latest considerations were unfair."  AR at 2.

This Court cannot find error in the BCNR's decision.  Indeed, the personnel policy changes Giel cited affected every officer eligible for promotion.  And it is not this Court's province to question those policy changes. *See Blevins v. Orr*, 721 F.2d 1419, 1423 (D.C. Cir. 1983) ("It is beyond the expertise, as well as the authority, of the judiciary to second-guess the military with respect to overall manpower needs and promotion policies or to pass judgment on military policy concerns.").  While promotional policy changes may have unfortunately affected Giel's promotion history, such military policy changes do not rise to the level of an arbitrary or capricious agency decision.

Overall, Giel has not presented this Court with any reason to find that the BCNR's decision was "arbitrary and capricious, contrary to the law, or unsupported by substantial evidence," *Frizelle*, 111 F.3d at 176.  Rather, this Court finds the BCNR's decision to deny Giel his requested relief was within its discretion and supported by record evidence.  In reaching its decision, a three member panel considered Giel's "application [and]. . . naval record and applicable statutes, regulations and policies[,] . . . the advisory opinions furnished by the Navy Personnel Command dated 22 November 1999 and 2 May 2000[, and] . . . [Giel's] counsel's letters dated 14 March 2000 with enclosures, 13 December 2000 with enclosure and 3 January 2001 with enclosure."  AR 1.  It reviewed Giel's "allegations of error and injustice" in accordance with the applicable regulations and procedures.  *Id.*  And the

15

BCNR gave a "satisfactory explanation," *Roberts*, 441 F. Supp. 2d at 118, for denying Giel's

request for SSBs for FYs 1991 through 1996, i.e., SECNAVINST 1401.1B (1997) restricted

the use of SSBs to boards that convened after those for which Giel sought special board

consideration.  Therefore, this Court finds the BCNR provided a "rational connection between

the facts found and the choice made," *Roberts*, 441 F. Supp. 2d at 118 (citation omitted), and

will, accordingly, grant the Secretary's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court will deny Giel's Cross-Motion for Summary

Judgment (# 15) and grant the Secretary's Motion for Summary Judgment (# 22 ).  A separate

order accompanies this memorandum opinion.


August _10_ , 2007

                                         Thomas F. Hogan
                                           Chief Judge